Good morning, Mr. Kirk and you can proceed. Please support and counsel. Good morning. My name is Bruce Kirkham. I represent the defendant appellant, Mr. James Hare. Mr. Hare received ineffective assistance of trial counsel who failed to move to suppress his alleged confession on the grounds that he was illegally seized by Hampshire police. Although the evidence from the bystanders report is somewhat inconsistent, are you conceding that he did admit driving the Honda? No, he denied making that statement, so I certainly do not concede that he made that statement. Mr. Hare was a passenger in a vehicle driven by a gentleman named Don, who was his friend and brother-in-law. Mr. Don did testify at Mr. Hare's bench trial and testified that he was told by the officer who made the stop of his vehicle that the basis of the stop was that he had an additional person in his car who wasn't in the car earlier in the evening. The numbers didn't match up from an earlier police encounter. Well, the officer who stopped him, or the second stop, was not the officer who stopped him the first time, right? That is correct. So how would he know, even if this were an offense, picking up somebody and having more passengers? I'm assuming Mr. Don is not 16, and that would cause a problem because when you're a new driver, you can't have too many passengers. But how would the second officer have even known that there were only three persons the first time and four this time? I can't answer that question. The record is silent on that. Nobody asked that question, apparently? Not that I'm aware of, and that officer did not testify at the trial. Only the officer who did the first stop of Mr. Don. Paradis or Paradisi? Paradis is how I was going to pronounce it here today. He was actually stopped by an officer, Veles, I believe. Mr. Kirkham isn't typically a motion to suppress ordinarily a matter of trial strategy. Ordinarily it is, but trial attorneys are not perfect. They make mistakes. Sometimes they miss issues. We don't defer automatically to trial counsel. Speaking of missing issues, apparently your office also missed the issue initially because that began as an Anders brief. It did begin as an Anders brief. We received an order from this court instructing me to brief this issue, and as I looked at it, I recognized the merit to the argument and I'm prepared to argue on behalf of Mr. Hare today that it wasn't an improper stop, that his alleged confession was the fruit of that poisonous, unlawful seizure. And at this point, there is, in the record, sufficient information to file a motion to suppress. And the record indicates the only indication in the record for the basis of the stop was the additional passenger. That's what automobiles are for, to move people around. You can add people, drop people off. I'm not aware of any law that says you can not have an extra person later in the evening than you did before. You know, traffic stops are judged under Terry. A Terry stop has to be justified at its inception. It was not justified at its inception here. So we have to follow Strickland in this particular case? Yes. You're not asking us to determine whether or not the stop was legal or not legal. You're asking us to determine whether there was ineffective assistance of counsel. Well, that's correct. And the basis of the ineffective assistance claim is the failure to file the motion to suppress based on the improper seizure of the improper traffic stop. So I'm sure the ineffective assistance, the results would have been different, basically. Well, yeah. Yes. We have to show a reasonable probability to establish prejudice under Strickland in these types of cases where we raise ineffective assistance for not moving to suppress. We have to show there's a reasonable probability that the outcome of the trial would have been different had the evidence been suppressed. And in this case, that that is shown where if you throw out the confession, the alleged confession, all you have is Officer Parabese's testimony that he was able to identify the defendant driving the red Honda earlier in the evening. He did not stop that vehicle. He had testified that he was able to identify the defendant by light reflected off a rearview mirror illuminated in the defendant's face. But didn't the court find specifically Parabese's testimony credible? Yes. So aren't we to give deference to the court's finding credibility? Well, but I think that it's not quite that simple. I think you have to assess the quality of the evidence without the alleged confession. And when you remove the confession from the equation, what you have is Mr. Hare denying that he was driving the car that evening. Then you have a questionable, I would call it an unreliable identification by a police officer. Well, did the officer have any, he didn't know Mr. Hare by face, did he? There's no indication in the record that he has. So he would never have been able to identify him by in terms of not facial identification, but who this person actually was and whether or not his driver's license was valid or not. That information came only as a result of the state. So the rest of the evidence wouldn't have mattered, correct? Correct. And according to the bystander's report or anything you have otherwise gleaned, is it clear when his, when the two officers apparently determined that his license was suspended? Was it strictly after Parabese arrived or was it, did Velez know that based upon his stop? I'm trying to recall. There's a lot of holes in the record here. I know that, well, I was wondering if you found something. I didn't, that's fine. I know that Parabese testified that when he arrived at the scene, he went to the scene where Velez conducted the stop and testified that Velez had the defendant out of the car and was speaking to him at that time. But beyond that, I don't know that there is the content of that conversation. There's nothing that indicates that Velez had already run the, the, uh, license when he got there, run the name, whatever. That's, I do not recall seeing that in the bystander's report. No. Your Honor, there is a sufficient basis in the record to show that this stop was improper at its inception. There were no airbending facts or acts following the traffic stop. It was at the scene. There's no indication where random was given. If you're doing an attenuation analysis, all the factors point in favor of finding that the alleged confession was the product of the illegal seizure. And for that reason, Your Honor, Mr. Hare asked that this court order that was, find this counsel was ineffective for not meaning to suppress a statement, or did the statement be suppressed and remand this cause for a new trial? Thank you very much. Miss Diaz, you can approach. Good morning, Your Honors. Counsel, may it please the court, Amy Diaz on behalf of the people of the state of Illinois. As we've been discussing, the issue today is whether defendant's trial counsel was ineffective for failing to file a motion to suppress in this case. As Justice Shostak alluded to earlier, this claim would be analyzed under Strickland. And in order to succeed on this claim, defendant would have to show that his trial attorney's decision not to file a motion to suppress was objectively, or it fell below an objective standard of reasonableness. And given that it's a motion to suppress, defendant would also have to show that the motion was meritorious or that there's a reasonable likelihood that the motion would have been granted. Is it illegal to pick up an additional passenger? Not that I know of. Is the validity of the stop, isn't the validity of this particular stop the real issue here? It rises or falls from the validity of the stop, doesn't it? No. No? No. The state had to prove, a defendant was charged with driving while license revoked. The state just had to prove that defendant was driving on a highway, on a road in Illinois, while his license was revoked. In order for defendant to get into the issues that he raises in his opening briefs regarding the Terry analysis, I mean, that would have come out during a motion to suppress had one been filed. We're not saying that a motion should have been filed, but the issue here is not whether or not the stop was reasonable from its inception. The state didn't have to bring any evidence about the stop during its case in chief. That's something that would have been litigated had a motion to suppress been filed. That's the point, that on this record, there was a reasonable basis to move to suppress because there was no reason in the record for the stop, which is what led to the defendant's admission that his driver's license was revoked. So, I mean, your argument is the presumption of effective assistance or the presumption that a lawyer would have looked at the possibility and the failure to file itself justifies his decision not to file a motion to suppress. Isn't that kind of what your argument is? Yes, my argument is that there's a strong presumption under Strickland that trial counsel acted within reason or professional reason. Right. And there's a wide range of things that trial counsel can do and trial counsel is presumed to have acted after discussing the issues with the client. So, trial strategy. What evidence was there that this defendant was doing anything unusual at the time of the stop? The evidence didn't come out during the state's case in chief. So, shouldn't it have come out at some point, somewhere? No, not absent a motion to suppress. That's the kind of information that would have come out had a motion to suppress been filed. Had the attorney been active with a little more competently, he probably would have filed a motion to suppress, correct? I disagree with that, your honor, because there's nothing in the record as short as it was to indicate, as counsel said, there are some holes in the record, but there's nothing in the record that indicates that a motion to suppress should have been filed. Well, there's no citation issued to Don, correct? There's no testimony that he was even given a warning ticket. No, there's no testimony. And if a police officer pulls someone over for a traffic violation, police officer ordinarily would either issue a citation or issue either a verbal warning or a written warning ticket, correct? Ordinarily? Ordinarily, I could probably agree with that. Yeah, this case is out of the ordinary in the sense that there's no warning ticket, there's no traffic citation, there's a trial, and there's no evidence whatsoever presented as to why the police officer pulled Mr. Don over. But again, I understand your point, but all they have to show is a reasonable probability, reasonable probability on the record, on this record, that a motion to suppress may have been successful. They don't have to show that they're going to succeed on remand, but that they might succeed, correct? That they might succeed, correct. A reasonable probability. A reasonable probability. And this record, even given the absence of the citation, we don't know what occurred. Would we have known more what occurred had there been a motion to suppress? Again, we would have known what would have occurred. Presumably, that probably would have assisted, but just because we would have obtained more information doesn't mean, it doesn't logically follow from the fact that we would have likely obtained more information that a motion to suppress should have been filed. And on remand, there may not be a motion to suppress. Or some other valid reason for the stop and the officer is just giving the guy a break because he has somebody who now he has to take into custody because he's driving on a revoked license, right? Maybe it won't work out the way the defendant hopes. Maybe it won't work out, but there's also the aspect of the judge finding defendants and Mr. Don's testimonies to be incredible. That's only with regard to whether or not the defendant was the driver. I believe that the testimony didn't go to the basis of the stop, did it? The judge in this case, I believe, found the testimonies incredible and that defendant's sequence of events did not make sense. But the subject matter of the testimony did not involve the justification for the stop, correct? There was no discussion of the stop absent cross-examination. Because that officer didn't even testify. Officer Velas didn't testify. We have nothing to show in this record why he stopped that car other than what Mr. Don had said, essentially, that there were three passengers at one time and now there are four. So that one, whether the judge, you know, when the judge says, I don't find them credible, there's no refuting that particular statement because that's the only one about the stop, correct? Correct. Because Officer Paradis didn't do the stop. He attended, but he didn't do the stop. He didn't do the stop. Right. But what? This court should defer to the trial court's finding of credibility because... Okay, but what, it has to go to something. He didn't look at them and he said, as to their sequence of events, that doesn't, that means he doesn't find them credible as to the sequence of events. Does that, are we to take that to mean he thinks they're lying from start to finish? Well, the judge did say that defendant and Mr. Don were incredible and that the sequence of events did not make sense per defendant's testimony. It was a dual finding. All right, but the officer, he did believe the only one who testified was Paradis. That's right. And Paradis, the only thing, at least that I found in the record, is Paradis said that he could identify the defendant as the driver of the red Honda. That was it. He didn't know him. Otherwise, he'd never checked his license at that point. He didn't check the registration at that point. He knew nothing about this man other than the reflection in the rear view mirror, this is the guy driving the car. That's the only thing Paradis said, correct? Correct. So how do we not question that issue as a defense attorney, if that's the only thing he said? We can't speculate as to what happened or what was discussed between defense attorney and her client. And during cross-examination of officer Paradis, defense attorney did ask officer Paradis if officer Velez had told him the reason for the stop. Officer Paradis said, no, you didn't tell me the reason for the stop. I think that leads to an inference that this issue, that defense counsel had at least thought about this issue before and discussed it with her client. The fact that she asked the officer about this at trial. So you're saying it's trial strategy? I believe it's trial strategy. And I think because of the strong presumption, which is the reason Strickland asks for us to abide by that strong presumption that these things are trial strategy, because we can't speculate as to what the common sense inference is when a police officer has somebody stop and it's not articulated on the radio, which apparently it was not because of, and then they walk up, the other officer, who's not the stopping officer, walks up and says, what do you have here? Isn't that the ordinary inquiry for purposes of safety control of the stop? Ordinarily a police officer who's responding or pulling up and it's not clear from the record whether he was radioed or just came upon the stop, correct? Well, he heard it on the radio. He heard it on the radio. Yes. But nothing's articulated about the reasons for the stop that, I mean, isn't common sense that a police officer is going to say, what do you have here? I'm just, just the candid response. Isn't that common sense? You're going to say, what do you have? What's going on? I'm sorry, officer Perry's when he said that, uh, what's going on if you had pulled up, right? I mean, the absence of any conversation for the reasons for the stop is a hole in your argument. There's no conversation at all. There's no conversation about the reason for the only conversation is with the defendant. Correct. Um, but I don't think that that the absence of that leads to the conclusion that a motion to suppress should have been filed. Are you inferring that the defense attorney may have known something you don't know? Yes. Which again goes to the presumption that I don't believe defendant can overcome the strong presumption that this was trial strategy. And to Justice Burkett's question, yes, I think ordinarily somebody, an officer who pulls up at the scene would say, oh, what's going on here? Or would ask what's going on here. However, the officer testified that he recognized the person who was already speaking with officer Valas after he came up, after he came up and prior to the stop, I'm sorry, prior to stop. This was after the second stop. Yeah. So after he came up, so that wouldn't have been probable cause or reasonable suspicion at that point because he had already been stopped. He'd already been stopped. So the only conversation that was had as Justice Burkett said was between officer parodies and the defendant. Now, do have this been a transcript? I don't know that we would have had any more information. I don't believe so. And officer parodies, I think yes, under normal circumstances, an officer who pulls up to the scene would ask what's going on here. But here he recognized as he testified to somebody who had been driving previously and he asked him or you, the person who had been driving the red Honda. Doesn't the defense attorney have to ask herself or himself? What was the reasonable suspicion for Valas's stop? Yes, I believe so. I think certainly, but we don't know that the defense attorney did not ask herself that. And we don't know that that discussion was not had with or between defense attorney and her client. And to go there is just pure speculation. What could the basis be for the stop? I can't speculate as to that. It's 1215 in Hampshire. It's a very dangerous time. Not being from Illinois, I'm not familiar with Hampshire, so I can't say, but I really can't speculate as to what the reason would have been for the stop. Your honor. When was the, this is just an interesting question that you may or may not have an answer to. Interesting to me. Anyway, when was the bystanders report actually prepared? Was it prepared right away to the best of your knowledge so that memories were fresher or did it come kind of on a leave of court after the Anders was denied? I do not know the answer to that. Your honors have no further questions. We would ask you to move on the judgment below. Thank you. Mr. Kirkwood, how do you respond to the state's argument that this is trial strategy? How do we determine that the defense attorney didn't know something and didn't really want to file a motion? Well, first, I think that's an inference too far to say that this was thoroughly investigated by trial counsel. The record's just not developed enough to make that large of an inference. The other thing that, and that leads me to the main point I wanted to make on the rebuttal here is that a motion to suppress can be brought during trial. I mean, when you get a witness who testifies, I was stopped because I had an additional passenger in my car. Reasonably competent counsel would have at that point said, your honor, I'd like to make a motion to suppress at this time based on an improper stop, Terry stop, an improper stop here. I mean, facts are brought out in trial that can lead to. It's especially true in a misdemeanor case, a traffic case where you don't have any discovery. We don't even know what discovery there was here, right? We don't know if officer Velas even filed a police report. He was stopped that he didn't issue a citation of warning, took no action. This is officer Paradis' case. He's the one who cited and was Mr. Hare. You know, if that fact surprised counsel at trial, counsel should have said I would pick up another passenger along the way during my evening in Hampshire. And while a judge might be hesitant to do it at a jury trial because inconveniencing possibly the panel, this was a bench trial, right? This was a bench trial and it could have been heard simultaneously. Absolutely. Concurrently was the word I was looking for. Do we, do you know the answer to the question when the bystanders report was prepared? Well, I was looking and the file stamp on it in the circuit court was August 5th of 2013. So it was prepared before that. I don't think it's dated by the parties who signed it. Let's see, I might have the date of the trial. So would it be more contemporaneous with the notice of appeal as opposed to the actual order requiring briefing? Yes. Um, June 10th was a notice of appeal. August 5th was the file stamp in, you know, they did a motion to reconsider. The trial counsel was focused on reasonable doubt. Her, she, her strategy, uh, her main strategy was to attack the identification by the officer because of the unusual circumstances of identification. Um, so that was her trial strategy didn't work out for her. Well, that was her motion for the trial. That was her post trial motion. She challenged the identification, the reasonable doubt. Wouldn't that have been her trial strategy all along and the reason why she didn't file a motion to suppress? Well, I think it's fair to say that every defense attorney has a trial strategy of preventing the state from proving your client guilty beyond a reasonable doubt. However, you can do that. You work with what you've got. In this case, you had an unreliable identification. Um, yeah, you're going to run with that. I mean, it's a, it's a misdemeanor driving while revoked. There's two of us. You're driving and you're revoked. Um, you know, you, you go with what you got in these cases and I think she went with what she got. She felt that there wasn't substantial or sufficient evidence to convict him of that. And that was, that was what she did. So the fact that she, it didn't work out for her, should the defendant have a second bite of the apple by saying, wait, she should have filed a motion to suppress. She should have filed a motion to suppress before trial if she had those facts. But at the very least, she should have filed a motion to suppress during the trial when the witness testified in the stop. The basis of the stop was adding a passenger. I mean, any competent trial attorney is going to go, is it illegal to add a passenger to your car to pick somebody up and have an extra passenger? I, at that point, at the very least, trial counsel should have stepped up and said, your honor, I move to strike the defendant's confession. This was an improper stop by officer bell us. Um, you know, you can, at the very least, you gotta, gotta make that motion at that point in time. Anything further? Counsel, just to summarize, please, uh, order that the defendants of alleged confession be suppressed. This calls for a new trial. Thank you. Wait, come back up here. What do you want us to do? You want us to speak there? I'm sorry. What do you want us to do to reverse and remand? Or do you want us to find ourselves to suppress the statement? What do you want us to do? I think there's a sufficient basis in the record to order that the statement be suppressed. And at that point, the defendant should get a new trial. Well, there was no I'm sorry. Based on what testimony would we find that there is enough evidence to suppress on the fact that it was an improper stop being based on officer bells is reason for making the stop. The list did not testify. The state was not required to call us. The state should be entitled to that opportunity to establish. You've you've you've made a case of prima facie case for suppression. The state should be allowed to respond to that. It's your burden, not the state's. The state should be entitled to rebut your prima facie case by coffee, calling officer balance and establishing that there was a reason places for the stop. Shouldn't that be our order remanded for a hearing? There is precedent that supports that. Yes, people versus first district. That is the order. That's the right thing. On behalf of my client, I would ask this court to suppress this statement and award him a new trial. If this court does not see that as an appropriate remedy at the least, it should be remanded for full suppression. Thank you. Mr Kirkham, you have to speed up your retreat the next time. Thank you. Thank you, folks. Thanks for your argument. The court will consider the case and render a decision in due course. Court is adjourned for the day. Thank you.